IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMISHA M. W., <br> on behalf of minor T.M.W., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of <br> the Social Security Administration, <br><br> Defendant. | § § § § § § § § § § § § | Case No. 3:18-cv-2357-BT |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tomisha M. W.,[1] on behalf of her minor child T.M.W., filed a civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## Background

Plaintiff filed an application for supplemental security income benefits under Title XVI of the Social Security Act on behalf of T.M.W., who was born on May 22, 2014, alleging he is disabled due to chronic airway disease. Administrative Record 20, 40, 176 (A.R.) (ECF No. 15-1); Pl.'s Br. 5 (ECF No. 18). On June 1, 2015, the date Plaintiff filed her application, T.M.W. was an older infant under the social

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

security regulations. A.R. 40. After Plaintiff's application was denied initially and on reconsideration, she requested a hearing before an administrative law judge (ALJ). That hearing took place on April 21, 2017, in Dallas, Texas, when T.M.W. was 2 years old. *Id.* 18, 20.

The ALJ found that T.M.W. was not disabled and, therefore, not entitled to supplemental security income. *Id.* 48. At step one of the three-step sequential evaluation,[2] the ALJ found that T.M.W. is a minor child who had never performed substantial gainful activity and, thus, had not engaged in substantial gainful activity since June 1, 2015. *Id.* 40. At steps two and three, the ALJ found that T.M.W. had the severe impairment of asthma; nonetheless, the ALJ found that his impairment, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.*

---

[2] "In determining whether a child is disabled under the meaning of the [Social Security] Act, a three-step evaluation is employed by the Commissioner: (1) 'whether the child is engaged in substantial gainful activity'; (2) 'whether the child has an impairment that is "severe"'; and (3) 'whether the child's impairment is medically or functionally equivalent in severity to the impairments listed in the disability regulations.'" *Swist ex rel. Green v. Barnhart*, 177 F. App'x 414, 416 (5th Cir. 2006) (per curiam) (quoting *Moore v. Barnhart,* 413 F.3d 718, 721 (8th Cir. 2005) (paraphrasing 20 C.F.R. § 416.924)); *see also Richard ex rel. Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (per curiam). "A claimant, whether a child or an adult, bears the burden of proving that she is disabled within the meaning of the Social Security Act." *Taylor ex rel. T.S.T. v. Astrue*, 2011 WL 941289, at *2 (E.D. La. Feb. 28, 2011), *adopted by* 2011 WL 976683 (E.D. La. Mar. 15, 2011) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987)); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted) (explaining that the claimant bears the burden of establishing a disability through the first four steps of the five-step analysis utilized for adults).

Plaintiff appealed the ALJ's decision to the Appeals Council. The Council affirmed. *Id.* 1. Plaintiff then filed this action in federal district court, arguing the ALJ erred in finding T.M.W. not disabled because (1) he failed to consider T.M.W.'s medically determinable impairments of eczema/dermatitis and allergies, and (2) he improperly evaluated T.M.W.'s functional limitations.  Pl.'s Br. 5, 11, 17.

**Legal Standards**

Judicial "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland*, 771 F.3d at 923  (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted); *see also Copeland*, 771 F.3d at 923 (quoting *Perez*, 415 F.3d at 461) ("Substantial evidence is 'more than a mere scintilla and less than a preponderance.'"). The Commissioner, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam)). Accordingly, the Court may not substitute its own judgment for the Commissioner's, and it may affirm only

on the grounds that the Commissioner stated to support his decision. *Copeland*, 771 F.3d at 923 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

**Analysis**

**I.**

Plaintiff first argues the ALJ erred because "[t]he record in this case clearly establishes the medically determinable impairments of eczema/dermatitis and allergies; however the ALJ did not evaluate whether such impairments constituted a severe impairment," such that he erred "under the *Stone* standard." Pl.'s Br. 11, 16. However, *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985), which concerns an adult standard for evaluating severity based on the impact an impairment has on an individual's ability to work, is inapposite to this case.

At step two of the five-step sequential evaluation process for adults, the ALJ must "consider the medical severity of [the claimant's] impairment(s)."[3] 20 C.F.R. § 404.1520(a)(4)(ii), (c). To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam) (citing 20

---

[3]"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

4

C.F.R. § 404.1520(a)(4)(ii), (c)). Under the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Finding that a literal application of this regulation would be inconsistent with the Social Security Act, the Fifth Circuit held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone*, 752 F.2d at 1101, 1104-05 (brackets and citations omitted). Additionally, a severity determination may not be "made without regard to the individual's ability to perform substantial gainful activity." *See id.* at 1104. To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) is used." *Id.* at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

*Stone*, however, dealt with a regulation and statute that was not tailored specifically to child disability. The Fifth Circuit noted this distinction and recognized that *Stone's* non-severity analysis applies only to adult claimants. *See Burnside ex rel. Burnside v. Bowen,* 845 F.2d 587, 591 (5th Cir. 1988) ("*Stone's* five-step evaluation procedure applies only to *adult* claimants, who must comply

5

with regulations set out in 20 C.F.R. § 416.920, not to child claimants, whose disabilities are evaluated according to the procedure set out in [child disability regulations].") (emphasis in original), *abrogated on other grounds by Sullivan v. Zebley*, 493 U.S. 521, 527 (1990), *superseded by statute as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 339 (S.D.N.Y. 2001).[4] For children, the statutory definition of disability requires a finding that the impairment "results in marked and severe functional limitations"—a requirement omitted from the general definition of disability. *Compare* 42 U.S.C. § 1382c(a)(3)(C)(i) with § 423(d) and § 1382c(a)(3)(A)-(B). This standard is more stringent than the standard for adults. *Denton ex rel. Denton v. Astrue*, 2008 WL 763209, at *8 (N.D. Tex. Mar. 21, 2008) ("Defendant correctly states that the standard for disability for a child is not only more stringent than that for an adult, but is more stringent than the previous children's disability evaluation standard."), *aff'd*, 295 F. App'x 702, 702 (5th Cir. 2008) (per curiam). Similarly, the regulation for determining disability for children provides that an impairment is not severe if it "is a slight abnormality or a combination of abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). Unlike in *Stone*, where the Fifth Circuit found that a literal application of 20 C.F.R. § 404.1520(c) would be inconsistent with the

---

[4] While *Burnside* was abrogated on other grounds, the Fifth Circuit cited it in a later unreported decision for the proposition that "[r]egulations of the Social Security Administration establish the criteria for whether a child's impairment constitutes a compensable disability." *Alexander v. Chater*, 95 F.3d 1148, 1148 (5th Cir. 1996) (per curiam) (citing *Burnside*, 845 F.2d at 590).

Social Security Act, this regulation is consistent with the statutory definition of disability applicable in child-disability cases.

Plaintiff has not shown that *Stone* applies in this child-disability case. And the ALJ's failure to consider any alleged impairment at step 2 under the *Stone* standard provides no basis for remand. *Mapps ex rel. M.J. v. Astrue*, 2010 WL 1946662, at *9 (N.D. Tex. Apr. 30, 2010); *see also Goffney ex rel. B.L. v. Astrue*, 2011 WL 1297184, at *5-6 (S.D. Miss. Mar. 31, 2011) (holding the ALJ's use of the severity standard from 20 C.F.R. § 416.924, the regulation governing disability standard for claimants under age 18, was the proper legal standard).

Further, although the ALJ did not specifically discuss T.M.W.'s eczema/dermatitis and allergies at step 2 of the sequential analysis, the written decision reflects that he "considered all the relevant evidence in the case record," including "objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings," as required by 20 C.F.R. § 416.924(a). A.R. 40-41. Additionally, in making his findings regarding functional equivalence, the ALJ "assessed the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not 'severe' in all of the affected domains." *Id*. 41. And here, the record indicates doctors advised Plaintiff to use Aveeno moisturizing cream,

dermasmooth, and hydrocortisone 2% to treat T.M.W.'s dermatitis/eczema. Def.'s Br. 4 (ECF No. 21); A.R. 554, 673, 696. Plaintiff reported that this treatment controlled T.M.W.'s eczema. A.R. 554. Similarly, Plaintiff stated that Zyrtec, Flonase, and Singulair reasonably control T.M.W.'s nasal allergies, unless she forgets to give him his medication. *Id*. 671, 694. Because "a medical condition that can reasonably be remedied by prescribed treatment is not disabling," even if the ALJ had found T.M.W.'s eczema/dermatitis and allergies to be severe impairments at step two, the Court finds he would have reached the same conclusion, that T.M.W. is not disabled within the meaning of § 1614(a)(3)(C) of the Social Security Act, since they are not disabling impairments. *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." (citations omitted)).

## II.

Plaintiff next argues the ALJ erred in evaluating T.M.W.'s functional limitations, specifically by failing to acknowledge substantial evidence and "determin[ing] that T.M.W. had less than marked limitation in moving about and manipulating objects, and in health and physical well-being" and not "compar[ing] T.M.W.'s functioning to that of a same-aged non-impaired child" with regard to each domain. Pl.'s Br. 17-18, 23. However, the Court finds the ALJ properly evaluated T.M.W.'s functional limitations.

The third step of the three-step evaluation to determine whether a child is disabled within the meaning of the Act requires the Commissioner to consider "whether the child's impairment is medically or functionally equivalent in severity to the impairments listed in the disability regulations.'" *Swist ex rel. Green*, 177 F. App'x at 416 (citation omitted). If a child's severe impairment does not meet or medically equal a listing, the ALJ must determine whether that impairment "'results in limitations that functionally equal the listings.'" *Gray o/b/o A.G. v. Berryhill*, 2018 WL 703010, at *2 (N.D. Tex. Jan. 8, 2018), *adopted by* 2018 WL 684874 (N.D. Tex. Feb. 1, 2018) (quoting 20 C.F.R. § 416.926a(a)). To do that, the ALJ must determine "whether the applicant's impairment results in a marked limitation in two domains or an extreme limitation in one domain for the following: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Swist ex rel. Green*, 177 F. App'x at 416 (citing 20 C.F.R. § 416.926a(b)(1)). "If the evidence shows that a child's impairment seriously interferes with his or her ability to independently initiate, sustain, or complete activities, the impairment is considered 'marked.'" *Gray o/b/o A.G.*, 2018 WL 703010, at *2 (citing 20 C.F.R. § 416.926a(e)(2)(i)). And "[i]f the evidence shows that a child's impairment very seriously interferes with his or her ability to independently initiate, sustain, or complete activities, the impairment is 'extreme.'" *Id.* (citing 20 C.F.R. § 416.926a(e)(3)(i)).

9

Here, the ALJ determined that T.M.W. has no limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself, and "less than marked limitation" in moving about and manipulating objects and health and physical well-being. A.R. 42-48. Plaintiff appears to contend that the ALJ's findings that T.M.W. had "less than marked limitation in moving about and manipulating objects, and in health and physical well-being" are not supported by substantial evidence. Pl.'s Br. 18. Specifically, Plaintiff contends that the ALJ "did not acknowledge the part of [her] statement that T.M.W. 'can't play for a long length of time,'" her "subsequent testimony under oath that T.M.W. had problems with going outside and trying to play due to coughing and wheezing," and her assertion "that T.M.W.'s medications caused him to be hyper," among other portions of her testimony. *Id*. 18-19. Plaintiff also argues that the ALJ failed to acknowledge medical evidence, including a report from March 3, 2015, indicating T.M.W. had "a cough and nasal congestion for one to two weeks with a fever for two to three days, and diarrhea for one week for one to two times per day," as well as other medical evidence pre-dating Plaintiff's June 1, 2015 application for supplemental security income. *Id*. 19 (citing A.R. 218); A.R. 40. Plaintiff further asserts that the ALJ wrongly "discounted the severity of T.M.W.'s asthma because his treatment was 'essentially routine and/or conservative in nature'" since "there is nothing routine about a 9 month to three-year old requiring thirteen medications." Pl.'s Br. 22.

The Court, however, finds the ALJ's determination that T.M.W. had less than marked limitation in moving about and manipulating objects and in health and physical well-being is supported by substantial evidence and that Plaintiff's objections do not support remand. As stated, substantial evidence means "more than a mere scintilla and less than a preponderance," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted); *see also Copeland*, 771 F.3d at 923. And a "marked limitation" is one that "interferes seriously" with a child's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It is "'more than moderate' but 'less than extreme.'" *Id*.

Here, the ALJ found T.M.W. had "less than marked limitation in moving about and manipulating objects." A.R. 45. This domain considers how a child "move[s] [his] body from one place to another and how [he] move[s] and manipulate[s] things." 20 C.F.R. § 416.926a(j). It evaluates a child's "gross and fine motor skills." *Id*.

> Older infants and toddlers . . . should begin to explore actively a wide area of [their] physical environment, using [their] bod[ies] with steadily increasing control and independence from others. [They] should begin to walk and run without assistance, and climb with increasing skill. [They] should frequently try to manipulate small objects and to use [their] hands to do or get something that [they] want or need. [Their] improved motor skills should enable [them] to play with small blocks, scribble with crayons, and feed [themselves].

11

*Id.* § 416.926a(j)(2)(ii). The ALJ supported his finding by citing reports from July and August 2015 in which Plaintiff reported that T.M.W. "had no issues performing activities or abilities" but that "he had to stop playing when he starts coughing or wheezing." A.R. 45, 184, 187. The ALJ also noted that consistent with Plaintiff's reports, in January 2017, Dr. Suja Nair, M.D., "noted that [T.M.W.] had been exhibiting more symptoms that require bronchodilator therapy due to weather changes." *Id.* 46, 694. The Court finds this evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's conclusion that T.M.W. had less than marked limitation in moving about and manipulating objects.

The ALJ also found T.M.W. had "less than marked limitation in health and physical well-being." A.R. 47. This domain considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [a child's] functioning," that are not considered in evaluating the child's ability to move about and manipulate objects. 20 C.F.R. § 416.926a(l). The ALJ supported his finding by citing examiners' reports that "he was active"; "there was no evidence of respiratory distress or wheezes"; "he had normal range of motion in his musculoskeletal system"; "his breathing was good"; and he was "smiling and running around the room," though he had been diagnosed previously with asthma, upper respiratory infection, and Bordetella pertussis. A.R. 47, 216, 220, 223-24, 227, 232, 235, 238, 240, 247, 326, 432-33, 440, 488, 523-24, 544, 550, 553, 556, 560, 650, 670-71, 714, 729, 749. Additionally, the ALJ noted that in

12

June 2015, an examiner at Children's Health Pediatric described T.M.W.'s asthma as "mild persistent," but later classified it as "moderate" persistent asthma without complication in October 2015. *Id.* 47, 441, 524. He also referenced T.M.W.'s September 2014 abdominal x-ray and April 2015 chest x-ray that revealed unremarkable results. *Id.* 47, 217-18, 318, 639. Further, the ALJ discussed Plaintiff's June 2015 report that T.M.W. was able to play and she had not had to pick him up from daycare due to his asthma symptoms and that his condition was better controlled with his medication. *Id.* 48, 433, 438, 454, 471, 642. Plaintiff also reported in October 2015 that T.M.W. slept better after taking Flovent. *Id.* 48, 521, 543. Last, in connection with this domain, the ALJ considered Dr. Nair's January 2017 report that T.M.W. had been "more symptomatically requiring bronchodilator therapy . . . due to weather changes," and her subsequent adjustment of his medication. *Id.* 48, 694, 697. The Court finds this evidence is adequate to support the ALJ's conclusion that T.M.W. had less than marked limitation in health and physical well-being.

Even so, Plaintiff objects that the ALJ did not acknowledge particular statements Plaintiff made or specific medical evidence and asserts that T.M.W.'s medical treatment was not routine. But the Court finds the ALJ supported his findings that T.M.W. had less than marked limitation in moving about and manipulating objections and health and physical well-being with substantial evidence. That the ALJ did not specifically mention the particular statements or pieces of evidence that Plaintiff points out on appeal does not discredit his findings.

13

The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen,* 864 F.2d 340, 343 (5th Cir. 1988) (per curiam) (citations omitted); *see also Martinez*, 64 F.3d at 174.

Furthermore, though Plaintiff alleges T.M.W. has been disabled since February 9, 2015, Plaintiff filed her application on behalf of T.M.W. on June 1, 2015. A.R. 37, 141-150. Supplemental security income benefits are only payable for the period following the application date; to be eligible, therefore, the ALJ must find T.M.W. to be disabled during the period his application was pending. 20 C.F.R. § 416.335; *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999) ("Res judicata does not prove an obstacle to her SSI claim because Brown cannot receive benefits for any month prior to the one in which she applied for SSI, which, in this case, is June of 1994."); *Hawthorne v. Astrue*, 493 F. Supp. 2d 838, 842 (S.D. Tex. 2007) ("A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled."). Accordingly, any medical records dated prior to June 1, 2015, are relevant for providing historical context but not for determining whether T.M.W. was disabled during the period his application was pending.

Last, Plaintiff argues the ALJ erred in evaluating T.M.W.'s functional limitations because he did not "compare T.M.W.'s functioning to that of a same-

aged non-impaired child" with regard to each domain. Pl.'s Br. 23. In making a functional-equivalence finding, the ALJ must "look at how appropriately, effectively, and independently [the child] perform[s] [his] activities compared to the performance of other children [his] age who do not have impairments." 20 C.F.R. § 416.926a(b). How a child functions in his activities is evaluated in terms of the above-mentioned six domains. *Id*. § 416.926a(b)(1). Here, the "Applicable Law" section of the ALJ's decision states that "[i]n determining whether an impairment or combination of impairments functionally equals the listings, the undersigned must assess the claimant's functioning in terms of six domains," and that "[i]n making [that] assessment, the [ALJ] must compare how appropriately, effectively, and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments." A.R. 38. For each of the first five domains, the ALJ explained what that domain is intended to analyze, described developmentally appropriate conduct relevant to that domain for a child without an impairment, and set forth examples of limited functioning within that domain "that children of different ages might have." *Id*. 42-46. With respect to the sixth domain, health and physical well-being, the ALJ did not specifically set forth developmentally appropriate conduct relevant to the domain for a child without an impairment because unlike the other five domains, the sixth does not address a child's abilities. Instead it addresses "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [a child's] functioning," that are not considered in connection with

15

moving about and manipulating objects. 20 C.F.R. § 416.926a(l). Because the ALJ specifically discussed the abilities of a child, in this case "an older infant or toddler," without an impairment in each of the first five domains and acknowledged that in making a functional-equivalence finding he must consider how appropriately, effectively, and independently the child-claimant performs activities compared to similarly-aged children without impairments, the Court finds the ALJ appropriately compared T.M.W.'s functioning to that of a same-aged non-impaired child with regard to each domain.

Nonetheless, Plaintiff cites *Gongora v. Colvin*, 2016 WL 3916065, at *8 (S.D. Tex. June 22, 2016), *adopted by* 2016 WL 3906751 (S.D. Tex. July 14, 2016), in which the Court found that the ALJ's decision "reflect[ed] that he did not compare G.I.B.'s functioning to that of a same-aged child without arthrogryposis and muscle alignment/fascia disorder, nor . . . expressly assess how much assistance G.I.B. require[d] to function like a non-impaired same-aged child." (citing 20 C.F.R. § 416.924a(5)(i)). The *Gongora* court remanded the case even though the ALJ "noted examples of appropriate functioning for older infants or toddlers without impairments, as well as limitations children of various ages could manifest in the various domains, including the domain of moving about and manipulating objects," as the ALJ did in this case. *Id.* However, here, apart from T.M.W.'s inability to engage in sports or spend prolonged periods of time outside, Plaintiff does not argue that T.M.W. requires assistance to complete tasks or otherwise functions differently than a non-impaired child. *See* Pl.'s Br. 22-23. Thus, the Court

16

finds that had the ALJ expressly stated his comparison of T.M.W.'s functioning to that of a same-aged non-impaired child within each domain, he would have arrived at the same conclusion, that T.M.W. is not disabled within the meaning of the Social Security Act. Accordingly, the ALJ did not err in evaluating T.M.W.'s functional limitations. *See Jones*, 851 F. Supp. 2d at 1015 ("As the Fifth Circuit made clear in those cases, procedural perfection is not required, and an adjudication of the Commissioner is not to be vacated unless a substantial right of the claimant has been adversely affected.").

## Conclusion

For the foregoing reasons, the hearing decision is AFFIRMED in all respects.

Signed March 27, 2020.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE